✎ JS 44   (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a)  PLAINTIFFS

Amarjit Singh

**DEFENDANTS**

Emilio T. Gonzalez; USCIS; Gerard Heinauer; Michael Chertoff; DHS; Michael B. Mukasey

**(b)**  County of Residence of First Listed Plaintiff  Alameda
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Robert B. Jobe, Katherine M. Lewis
Law Office of Robert B. Jobe
550 Kearny Street, Ste. 200, SF CA 94108
415-956-5513

Attorneys (If Known)

United States Attorney's Office
450 Golden Gate Ave., 9th Fl.
San Francisco, CA 94102

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
        Plaintiff

☐ 3  Federal Question
        (U.S. Government Not a Party)

☒ 2  U.S. Government
        Defendant

☐ 4  Diversity
        (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 900Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Determination |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | Under Equal Access |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | to Justice |
| | Other | | Alien Detainee | | ☐ 950 Constitutionality of |
| | ☐ 440 Other Civil Rights | | ☒ 465 Other Immigration | | State Statutes |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original
        Proceeding

☐ 2  Removed from
        State Court

☐ 3  Remanded from
        Appellate Court

☐ 4  Reinstated or
        Reopened

☐ 5  Transferred from
        another district
        (specify)

☐ 6  Multidistrict
        Litigation

☐ 7  Appeal to District
        Judge from
        Magistrate
        Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
5 USC 702

Brief description of cause:
Administrative Procedure Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
    UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".   Singh v. Gonzalez et al., No. C 08-00273 CRB

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND     ☐ SAN JOSE

DATE
2/20/08

SIGNATURE OF ATTORNEY OF RECORD

Robert B. Jobe (Cal. State Bar #133089)
Katherine M. Lewis (Cal. State Bar #247258)
LAW OFFICE OF ROBERT B. JOBE
550 Kearny Street, Ste. 200
San Francisco, CA 94108
Tel:    (415) 956-5513
Fax:    (415) 840-0308
Email: bob@jobelaw.com

Attorneys for Plaintiff.

E-filing

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

MHP

AMARJIT SINGH,

    Plaintiff,

    v.

EMILIO T. GONZALEZ, DIRECTOR,
USCIS; U.S. CITIZENSHIP AND
IMMIGRATION SERVICES; GERARD
HEINAUER, DIRECTOR, USCIS
NEBRASKA SERVICE CENTER;
MICHAEL CHERTOFF, SECRETARY,
DEPARTMENT OF HOMELAND
SECURITY; DEPARTMENT OF
HOMELAND SECURITY;
MICHAEL B. MUKASEY, U.S.
ATTORNEY GENERAL,

    Defendants.

No.

CV 08    1021

COMPLAINT FOR RELIEF UNDER
THE ADMINISTRATIVE PROCEDURE
ACT

DHS Alien Number: 75-772-804

## COMPLAINT FOR RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT

By and through his undersigned attorneys, Plaintiff, AMARJIT SINGH ("Mr. Singh"),
as and for his complaint, alleges as follows:

## INTRODUCTION

1.    Mr. Singh was born on October 4, 1970 in Amritsar, Punjab, India and is a native
and citizen of India, who has been granted asylum in the United States. On August 10, 2004,
the Board of Immigration Appeals ("Board" or "BIA") found that Mr. Singh was credible, and

that his "testimony describing the nature of the interrogations, the warnings, and the physical harm he suffered at the hands of Indian police established past persecution on account of his political opinion, actual or imputed." Exh. 1 *(Board Decision)* at 2. The Board held that Mr. Singh warranted "asylum in the exercise of discretion," and thus granted him asylum. *Id.* In proceedings before the Immigration Judge ("IJ"), on appeal before the Board, and in its Motion to Reconsider before the Board, the Department of Homeland Security ("DHS") never argued that Mr. Singh's membership in, material support of, and solicitation for the Shiromani Akali Dal Mann (Amritsar) made him inadmissable pursuant to 8 U.S.C. § 1182(a)(3). Mr. Singh's membership and involvement in the Shiromani Akali Dal Mann (Amritsar) were the basis of his asylum claim and were known to the Board, who granted asylum, necessarily finding that Mr. Singh was not inadmissible.

2.    USCIS regulations outline the procedures that must be followed for an asylee to adjust his status to that of a lawful permanent resident. After one year of physical presence in the United States as an asylee, a person granted asylum may adjust his status "to that of an alien lawfully admitted for permanent residence." 8 C.F.R. § 1209.2(a). *See also* INA § 209, 8 U.S.C. § 1159. Thus, on or about August 25, 2005, Mr. Singh filed an application to adjust his status to that of a lawful permanent resident (Form I-485) with the U.S. Citizenship and Immigration Services ("USCIS," formerly the Immigration and Naturalization Service).[1]

3.    On May 11, 2005, the REAL ID Act of 2005, Pub. L. No. 109-12, 119 Stat. 231, went into effect, and amended the definition of an undesignated "terrorist organization" to include "a group of two or more individuals, whether organized or not, which engages in, **or has a subgroup which engages in**, the activities described in subclauses (I) through (VI) of clause

---

[1] Pursuant to the *Department of Homeland Security Reorganization Plan, Homeland Security Act of 2002*, Pub. L. No. 107-296, 116 Stat. 2135 (2002), 6 U.S.C. §§ 101-557, as of March 1, 2003, the INS was abolished and its functions were transferred to the U.S. Citizenship and Immigration Services ("USCIS") within the Department of Homeland Security ("DHS").

1   (iv)." 8 U.S.C. § 1182(a)(3)(B)(vi)(III) (emphasis added).[2]

2       4.    In a letter dated January 14, 2008, USCIS denied Mr. Singh's Form I-485, on the

3   grounds that his membership in, material support of, and solicitation for the Shiromani Akali

4   Dal (Amritsar) make him inadmissable pursuant to sections 212(a)(3)(B)(i)(I) and (VI) of the

5   Immigration and Nationality Act ("INA" or "Act"), 8 U.S.C. § 1182(a)(3)(B)(i)(I) and (VI).[3]

6   Exh. 2 (*Decision on Application for Status as Permanent Resident*) at 4.  USCIS noted that in

7   his asylum application, asylum interview, and adjustment of status application, Mr. Singh

8   declared his membership and participation in the Shiromani Akali Dal (Amritsar).  *Id.* at 3.  In

9   concluding that the Shiromani Akali Dal Mann Party is an undesignated terrorist organization

10   pursuant to 8 U.S.C. § 1182(a)(3)(B)(vi)(III) and finding Mr. Singh inadmissible because of his

11   participation in that organization, DHS contended:

12       The INA, at section 212(a)(3)(B)(vi)(III) [8 U.S.C. § 1182(a)(3)(B)(vi)(III)], defines a
terrorist organization as an organization that is a group of two or more individuals,
13   whether organized or not, which engages in or has a subgroup which engages in, the
activities described in subclauses (I) through (VI) of clause (iv).

14       Due to its subgroups, AISSF [All India Sikh Students' Federation] and ISYF [The
International Sikh Youth Federation], the Akali Dal meets the current definition of an
15   undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III) [8 U.S.C. §
1182(a)(3)(B)(vi)(III)].  The violent activities of the AISSF and the ISYF match those
16   described in section 212(a)(3)(B)(iii) [8 U.S.C. § 1182(a)(3)(B)(iii)] and
212(a)(3)(B)(iv) [8 U.S.C. § 1182(a)(3)(B)(iv)].

17       Due to the activities of Akali Dal it meets the current definition of an undesignated
18   terrorist organization at INA section 212(a)(3)(B)(vi)(III) [8 U.S.C. §
1182(a)(3)(B)(vi)(III)].  The violent activities of Akali Dal match those described in
19   section 212(a)(3)(B)(iv) [8 U.S.C. § 1182(a)(3)(B)(iv)] and 212(a)(3)(B)(iii) [8 U.S.C. §
1182(a)(3)(B)(iii)].  Thus, you are inadmissable under INA section 212(a)(3)(B)(i)(VI)

20    

21     [2] Prior to the passage of the Real ID Act of 2005, and when Mr. Singh was granted asylum in
22   2004, an undesignated "terrorist group" was defined as, "a group of two or more individuals, whether
organized or not, which engages in the activities described in subclause (I), (II), or (III) of clause
23   (iv)." 8 U.S.C. § 1182(a)(3)(B)(vi)(III) (2004).

24     [3]On January 15, 2008, more than two years after Mr. Singh filed his I-485, Mr. Singh filed a
25   Complaint for a Writ of Mandamus and Declaratory and Injunctive Relief, asking that this Court
compel the completion of Mr. Singh's criminal background checks and order USCIS to immediately
26   adjudicate his Form I-485.  Since USCIS finally adjudicated Mr. Singh's application for adjustment
of status, the Complaint that Mr. Singh filed with this Court on January 15, 2008 has been rendered
27   moot and has been voluntarily dismissed.

28   Complaint for Relief Under the APA            3

[8 U.S.C. § 1182(a)(3)(B)(I)(VI)] based on your membership in the Akali Dal.

Due to the activities of Akali Dal [it] meets the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III) [8 U.S.C. § 1182(a)(3)(B)(vi)(III)]. The violent activities of Akali Dal match those described in section 212(a)(3)(B)(iv) [8 U.S.C. § 1182(a)(3)(B)(iv)] and 212(a)(3)(B)(iii) [8 U.S.C. § 1182(a)(3)(B)(iii)]. Because your act(s) of material support fo the Akali Dal was voluntary, you are inadmissable under INA section 212(a)(3)(B)(i)(I) [8 U.S.C. § 1182(a)(3)(B)(i)(I)].

Due to the activities of Akali Dal [it] meets the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III) [8 U.S.C. § 1182(a)(3)(B)(vi)(III)]. The violent activities of Akali Dal match those described in section 212(a)(3)(B)(iv) [8 U.S.C. § 1182(a)(3)(B)(iv)] and 212(a)(3)(B)(iii) [8 U.S.C. § 1182(a)(3)(B)(iii)]. The solicitation that you did on behalf of this organization makes you inadmissable under INA section 212(a)(3)(B)(i)(I) [8 U.S.C. § 1182(a)(3)(B)(i)(I)].

Accordingly, your application must be and hereby is denied.

The regulations do not provide for an appeal to this decision.

*Id.* at 4.

5.    Because DHS's decision denying Mr. Singh's application for adjustment of status was arbitrary, capricious, wholly unsupported by substantial evidence, and otherwise not in accordance with law, it must be set aside pursuant to Administrative Procedure Act § 701, *et seq*.

**JURISDICTION**

6.    Jurisdiction over the subject matter of this civil action is conferred on this Court by 28 U.S.C. § 1331, as a civil action arising under the Constitution,[4] laws, or treaties of the United States; 28 U.S.C. §§ 2201 and 2202, as a civil action seeking, in addition to other remedies, a declaratory judgment; and 5 U.S.C. § 702, as a challenge to agency action under the Administrative Procedure Act ("APA").

**VENUE**

7.    Venue is properly in this district pursuant to 28 U.S.C. §§ 1391(e)(2) and (e)(3), because a substantial part of the events giving rise to this claim occurred in this district, Mr. Singh resides in this district, and no real property is involved in this action.

---

[4] The Due Process Clause and Article III of the Constitution also require that some judicial forum remain available for Mr. Singh to challenge the denial of his application for adjustment of status.

Complaint for Relief Under the APA                4

**STANDING**

8.     The APA affords a right of review to a person who is "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Defendants' action resulted in the denial of Plaintiff's application, with no right of appeal. Plaintiff thus falls within the APA's standing provisions. *See Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs*, 45 F.3d 469, 471-72 (D.C. Cir. 1995), *reh'g denied*, 74 F.3d 1308 (D.C. Cir.), *vacated on other grounds,* 117 S. Ct. 378 (1996); *see also, Abourezk v. Reagan*, 785 F.2d 1043, 1050-51 (D.C. Cir. 1986).

**PLAINTIFF**

9.     Amarjit Singh is a native and citizen of India who currently resides at 570 Firenza Street, Livermore, California. Mr. Singh was granted asylum on August 10, 2004 by the Board. After having been granted asylum, Mr. Singh applied to adjust his status to that of a lawful permanent resident pursuant to 8 U.S.C. § 1159(b). On January 14, 2008, however, DHS denied Mr. Singh's application for adjustment of status.

**DEFENDANTS**

10.     Emilio T. Gonzalez is the Director of the USCIS and, as such, has been delegated the authority to direct the administration of the USCIS, and to enforce the INA and all other laws relating to the immigration and naturalization of non-citizens. Defendant Gonzalez is sued herein in his official capacity.

11.     The United States Citizenship and Immigration Services is the federal agency within DHS that is responsible for the administration and enforcement of the INA and all other laws relating to the immigration and naturalization of non-citizens.

12.     Gerard Heinauer is the Director of the USCIS Nebraska Service Center, the office within USCIS that issued the denial of Mr. Singh's application for adjustment of status, and is sued in his official capacity.

13.     Michael Chertoff is the Secretary of DHS, the executive department which contains the USCIS, and is sued herein in his official capacity. Defendant Chertoff is charged with the administration and enforcement of the INA pursuant to INA § 103(a), 8 U.S.C. §

1  1103(a).

2      14.    The Department of Homeland Security is the federal agency encompassing the

3  USCIS, which is responsible for the administration and enforcement of the INA and all other

4  laws relating to the immigration and naturalization of non-citizens.

5      15.    Michael B. Mukasey is sued in his official capacity as the U.S. Attorney General.

6  In that capacity, he is charged with supervising and directing the administration and operation of

7  the Department of Justice, including the FBI.

8                          **FIRST CAUSE OF ACTION**
           **(Denial of Mr. Singh's Application for Adjustment of Status)**
9                (Violation of the Federal Regulations)

10     16.  Plaintiff repeats, alleges, and incorporates paragraphs 1 through 15 above as though

11  fully set forth herein.

12     17.  In denying Mr. Singh's application to adjust his status to that of a lawful permanent

13  resident pursuant to 8 U.S.C. § 1159(b) and providing no means to respond to the designation of

14  the Shiromani Akali Dal Mann Party as an "undesignated terrorist organization" under 8 U.S.C.

   § 1182(a)(3)(vi)(III), DHS violated 8 C.F.R. § 103.2 (b)(16).

15     18.  Pursuant to 8 C.F.R. § 103.2 (b)(16), "an applicant or petitioner shall be permitted

16  to inspect the record of proceeding which constitutes the basis for the decision, except as

17  provided in the following paragraphs." The regulations then explain:

18        If the decision will be adverse to the applicant or petitioner and is based on derogatory
          information considered by the Service and of which the applicant or petitioner is
19        unaware, he/she shall be advised of this fact and offered an opportunity to rebut the
          information and present information in his/her own behalf before the decision is
20        rendered, except as provided in paragraphs (b)(16)(ii),[5] (iii),[6] and (iv)[7] of this section.

21

22     [5] 8 C.F.R. § 103.2 (b)(16)(ii) states that "[a] determination of statutory eligibility shall be based
   only on information contained in the record of proceeding which is disclosed to the applicant
23  or petitioner, except as provided in paragraph (b)(16)(iv) of this section."

24
       [6] 8 C.F.R. § 103.2 (b)(16)(iii) states that "[w]here an application may be granted or denied in the
25  exercise of discretion, the decision to exercise discretion favorably or unfavorably may be based in
   whole or in part on classified information not contained in the record and not made available to the
26  applicant, provided the regional commissioner has determined that such information is relevant and
   is classified under Executive Order No. 12356 (47 FR 14874; April 6, 1982) as requiring protection

27

28

Any explanation, rebuttal, or information presented by or in behalf of the applicant or petitioner shall be included in the record of proceeding.

8 C.F.R. § 103.2 (b)(16)(i).

19.    In this case, DHS has never provided Mr. Singh with an opportunity to "inspect the record of proceeding which constitute[d] the basis for the decision." 8 C.F.R. § 103.2 (b)(16). Moreover, DHS did not provide Mr. Singh with an opportunity "to rebut the information" that the Akali Dal Mann was an "undesignated terrorist organization," nor did DHS provide Mr. Singh with an opportunity to "present information in his/her own behalf before the decision [was] rendered." 8 C.F.R. § 103.2 (b)(16)(i). Rather, DHS issued a letter denying his application to adjust to permanent resident status, and indicated that there was no appeal of this decision. Exh. 2 (*Decision on Application for Status as Permanent Resident*).

20.    Thus, Defendants' denial of Mr. Singh's application for adjustment of status is in clear violation of 8 C.F.R. § 103.2 (b)(16). Mr. Singh must be provided with an opportunity to inspect the record of proceeding and present information to USCIS before they render a final decision on his adjustment of status of application. Defendants are, quite simply, failing to comply with their regulatory duties.

## SECOND CAUSE OF ACTION
### (Denial of Mr. Singh's Application for Adjustment of Status)
(Violation of the Administrative Procedure Act)

21.    Plaintiff repeats, alleges, and incorporates paragraphs 1 through 20 above as though

---

from unauthorized disclosure in the interest of national security."

[7] 8 C.F.R. § 103.2 (b)(16)(iv) states:
    An applicant or petitioner shall not be provided any information contained in the record or outside the record which is 12356 (47 FR 14874; April 6, 1982) as requiring protection from unauthorized disclosure in the interest of national security, unless the classifying authority has agreed in writing to such disclosure. Whenever he/she believes he/she can do so consistently with safeguarding both the information and its source, the regional commissioner should direct that the applicant or petitioner be given notice of the general nature of the information and an opportunity to offer opposing evidence. The regional commissioner's authorization to use such classified information shall be made a part of the record. A decision based in whole or in part on such classified information shall state that the information is material to the decision.

1  fully set forth herein.

2      22.  In denying Mr. Singh's application to adjust his status to that of a lawful permanent

3  resident pursuant to 8 U.S.C. § 1159(b), DHS committed several errors of law.

4  **By Denying Mr. Singh's Application for Adjustment of Status and Providing No Means
   To Appeal or Respond to the Classification of the Shiromani Akali Dal Mann Party as an
5  "Undesignated Terrorist Organization" Under 8 U.S.C. § 1182(a)(3)(vi)(III), DHS
   Violated the APA.**

6      23.    By denying Mr. Singh's application for adjustment of status, without providing

7  any opportunity to respond to the alleged grounds of inadmissibility, which hinge on the

8  classification of the Shiromani Akali Dal Mann Party as an undesignated "terrorist organization"

9  under 8 U.S.C. § 1182(a)(3)(vi)(III), Defendants have acted arbitrarily, capriciously, and not in

10  accordance with the law.

11  **In the Alternative, DHS's Designation of the Shiromani Akali Dal Mann Party as an
    "Undesignated Terrorist Organization" Under 8 U.S.C. § 1182(a)(3)(vi)(III) Is Not
12  Supported by Substantial Evidence in Violation of 5 U.S.C. § 706.**

13      24.    A reviewing court reviews an agency's reasoning to determine whether it is

14  "arbitrary" or "capricious," by determining whether it is supported by "substantial evidence."

15  *Dickinson v. Zurko*, 527 U.S. 150, 157-158 (1999).  An administrative action is arbitrary and

16  capricious, and therefore in violation of the Administrative Procedure Act, if the action is not

17  supported by evidence or is lacking a rational basis. *Hong Kong T.V. Video Program, Inc. v.*

18  *Ilchert*, 685 F. Supp. 712, 716-717 (N.D. Cal. 1988).  In reviewing the claim that an agency

19  acted in an arbitrary and capricious manner, courts must ensure that the agency has examined

20  the relevant data and articulated a satisfactory explanation for its action, including a rational

21  connection between the facts found and the choice made.  *aaiPharma Inc. v. Thompson*, 296

22  F.3d 227 (4th Cir. 2002), *cert. denied*, 538 U.S. 923 (2003).

23      25.    Substantial evidence does not support DHS's conclusion that Shiromani Akali Dal

24  Mann Party is an "undesignated terrorist organization" under 8 U.S.C. § 1182(a)(3)(vi)(III).  In

25  concluding that "[d]ue to the activities of Akali Dal, it meets the current definition of an

26  undesignated terrorist organization," DHS cited **no** activities of the Shiromani Akali Dal Mann

27  (Amritsar), the organization to which Mr. Singh belongs. Exh. 2 (*Decision on Application for

28  Status as Permanent Resident*) at 4.  Instead, DHS discussed only the activities of the ISYF,

1  AISSF, and other unrelated organizations. *Id.* at 3-4. To establish that ISYF and AISSF are

2  "subgroups" of the Shiromani Akali Dal Mann (Amritsar), DHS cited only to a single report, "a

3  1992 Department of State background information report on terrorist groups (found on the

4  www.fas.org site)," reporting that:

> Sikh terrorism is sponsored by a number of Indian and expatriate Sikh groups who want
> to carve out an independent Sikh state called Khalistan ("Land of the Pure" from Indian
> territory. Sikh violence outside India, which surged following the Indian Army's 1984
> assault on the Golden Temple, Sikhism's holiest shrine, has decreased but remains high.
> Groups that have carried out acts of terrorism include the Dashmesh or 10th Regiment
> (active in India, Germany, and Canada); Dal Khalsa; Babbar Khalsa (India, Western
> Europe, Canada); and the All-India Sikh Students Federation (militant wing of the main
> Sikh party, the Akali Dal, **now splintered**).

9  *Id.* at 3 (*emphasis added*). DHS's conclusion that Shiromani Akali Dal Mann (Amritsar) is an

10  "undesignated terrorist organization" rests on a misreading of the evidence of record and is

11  arbitrary, capricious, and unsupported by substantial evidence.

### THIRD CAUSE OF ACTION
**(Denial of Mr. Singh's Application for Adjustment of Status)**
(Violation of Fifth Amendment Procedural Due Process)

14  26.    Plaintiff repeats, alleges, and incorporates paragraphs 1 through 25 above as

15  though fully set forth herein.

16  27.    The Due Process Clause extends to aliens residing in the United States. It

17  protects even aliens living here unlawfully:

> There are literally millions of aliens within the jurisdiction of the United States. The Fifth
> Amendment, as well as the Fourteenth Amendment, protects every one of these persons
> from deprivations of life, liberty, or property without due process of law. Even one whose
> presence in this country is unlawful, involuntary, or transitory is entitled to that
> constitutional protection.

21  *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). The Due Process test of *Mathews v. Eldridge*, 424 U.S.

22  319 (1975), which involves a balancing of equities, applies here. What process is due involves an

23  evaluation of "the interest at stake for the individual, the risk of erroneous deprivation of the interest

24  through the  procedures used as well as the probably value of additional, or different procedural

   safeguards, and the interest of the government in using the current procedures." *Id.* at 334-35.

26  28.    In this case, Mr. Singh, who has been granted asylee status, has a substantial

27  individual interest in becoming a lawful permanent resident. Lawful permanent resident status

28  confers many advantages over asylee status. Lawful permanent residents have the privilege of

1  residing and working permanently in the United States, INA § 101(a)(20), 8 U.S.C. §

2  1101(a)(20), they may travel outside the United States freely and generally are readmitted to the

3  United States automatically, INA § 101(a)(13)(C), 8 U.S.C. § 1101(a)(13)(C), and they may

4  petition to immigrate close family members, INA §§ 201 and 203, 8 U.S.C. §§ 1151 and 1153.

5  After five years of status as a lawful permanent resident, an individual may apply to naturalize

6  his status to that of a U.S. citizen. INA § 316(a), 8 U.S.C. § 1427(a).  Because lawful

7  permanent resident status is a prerequisite for naturalization, any delay in adjusting to lawful

8  permanent resident status also delays eventual naturalization.

9        29.    Furthermore, Mr. Singh merely requests an opportunity to inspect the record of

10  proceeding and present information to DHS before they render a final decision on his

11  adjustment of status of application.  The additional review is an important safeguard, especially

12  in light of the individual interests at stake.

13        30.  Defendants' denial of Mr. Singh's application for adjustment of status, with no

14  opportunity to present rebuttal evidence, violates his right as an asylee to seek adjustment of

15  status pursuant to 8 U.S.C. § 1159, without adequate justification and sufficient procedural

16  safeguards, as guaranteed by the Due Process Clause of the Fifth Amendment to the United

17  States Constitution.

## RELIEF REQUESTED

18  WHEREFORE, Plaintiff prays that this Court:

19  (1)    Accept jurisdiction over this action;

20  (2)    Declare DHS's decision denying Mr. Singh's application for adjustment of status

21  to be arbitrary, capricious, and otherwise not in accordance with the law;

22  (3)    Declare that DHS's decision denying Mr. Singh's application for adjustment of

23  status without an opportunity to respond to the information to be a violation of the Federal

24  Regulations and the Due Process Clause of the Fifth Amendment;

25  (4)    Order DHS to provide Mr. Singh with an opportunity to inspect the record of

26  proceeding and rebut any adverse information before rendering a final decision on his

27  application for adjustment of status.

28  Complaint for Relief Under the APA                    10

1    (5)    In the alternative, reverse the denial of Mr. Singh's application for adjustment of

2    status since DHS's decision is not supported by substantial evidence;

3    (6)    Grant attorney's fees and costs of court under 28 U.S.C. § 2412, 28 U.S.C. §

4    1920, Fed. R. Civ. P. 54(d), and other authority; and

5    (7)    Grant such other and further relief as this Court deems just and proper under the

6    circumstances.

7

8    DATED:    February 20, 2008    Respectfully Submitted,

9

10    Robert B. Jobe
      Katherine M. Lewis
11    LAW OFFICE OF ROBERT B. JOBE
      550 Kearny St., Ste. 200
12    San Francisco, CA 94108
      (415) 956-5513
13    (415) 840-0308

14    Attorneys for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT

# 1



**U.S. Department of Ju~~e**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

---

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

**Piciucco, Marirose**                          **Office of the District Counsel/SFR**
**550 Kearny Street**                           **P.O. Box 26449**
**Ste 150**                                     **San Francisco, CA 94126-6449**
**San Francisco, CA 94108-0000**

Name: **SINGH, AMARJIT**                          **A75-772-804**

<u>Date</u> of this notice: 08/10/2004

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Frank Krider
Acting Chief Clerk

Enclosure

Panel Members:
    HOLMES, DAVID B.
    HURWITZ, GERALD S.
    MILLER, NEIL P.

**U.S. Department of Justice**                      Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia  22041

---

File:  A75 772 804 - San Francisco              Date:       AUG 1 0 2004

In re: AMARJIT SINGH

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Marirose Piciucco, Esquire

ON BEHALF OF DHS:          Stephen A. Johnston
                           Assistant Chief Counsel

CHARGE:

    Notice:  Sec.   237(a)(1)(B), I&N Act [8 U.S.C. § 1227(a)(1)(B)] -
                  In the United States in violation of law

APPLICATION:  Asylum and withholding of deportation

ORDER:

    PER CURIAM. The respondent has appealed from the Immigration Judge's May 16, 2003, decision denying the respondent's request for asylum and withholding of removal under the Immigration and Nationality Act. The Immigration Judge found the respondent, a 34-year-old native and citizen of India, did not provide credible evidence to support his claim that Indian police officers arrested, held him in custody, and beat him in 1998 and again in 1999 because he was an active member of the Shiromani Kali Dal Mann Party in India. In doing so, the Immigration Judge stated: "As the court cannot make findings of fact, its conclusion must be that respondent is not credible (I.J. at 36)." This finding is clearly erroneous under controlling case law in the United States Court of Appeals for the Ninth Circuit, the circuit in which this case arises. Specifically, the Ninth Circuit has held that an adverse credibility finding (1) "must be supported by specific, cogent reasons and (2) the reasons set forth must be substantial and must bear a legitimate nexus to the finding." *See Akinmade v. INS*, 196 F.3d 951, 954 (9th Cir. 1999) (internal quotations omitted). Minor inconsistencies identified in the decision and conclusions based on speculation, conjecture, or unsupported assumptions are insufficient to support an adverse credibility finding. *See Salaam v. INS*, 229 F.3d 1234 (9th Cir. 2000).

    Here, the key events underlying the respondent's request for relief are the 1998 and the 1999 arrests that he described during his hearing testimony and also in his asylum application. No contrary evidence was introduced during the hearing and his testimony was consistent with his prior statements. Because the

A75 772 804

Immigration Judge did not identify any discrepancies or inconsistencies in the respondent's evidence on the key events in this case, we cannot affirm the Immigration Judge's adverse credibility finding under controlling case law. *See Salaam v. INS, supra; Akinmade v. INS, supra.*

   We find that respondent's testimony describing the nature of the interrogations, the warnings, and the physical harm he suffered at the hands of Indian police established past persecution on account of his political opinion, actual or imputed. *See Chanchavac v. INS*, 207 F.3d 584 (9th Cir. 2000); *Garrovillas v. INS*, 156 F.3d 1010 (9th Cir. 1998); *Singh v. Ilchert*, 63 F.3d 1501 (9th Cir. 1995). The respondent's showing of past persecution triggers a rebuttable presumption that he has a well-founded fear of persecution should he return to India. *See Del Carmen Molina v. INS*, 170 F.3d 1247 (9th Cir. 1999); *Garrovillas v. INS,* 156 F.3d 1010 (9th Cir. 1998); 8 C.F.R. § 1208.13(b)(1)(i). We find that on the basis of the record before us, the presumption has not been rebutted. Our review of the record reveals that, on balance, the respondent warrants asylum in the exercise of discretion. Because the respondent's asylum application is approved, we need not address the issue of the respondent's eligibility for withholding of deportation or any of the other issues raised in the appeal. *See Matter of D-V-*, 21 I&N Dec. 77, 80 BIA 1993). Accordingly, we issue the following orders.

   FURTHER ORDER:   The respondent's appeal is sustained.

   FURTHER ORDER:   The respondent is granted asylum pursuant to section 208 of the Act, 8 U.S.C. § 1158.

_____
FOR THE BOARD

# EXHIBIT

# 2



U.S. Department of Homeland Security
P.O. Box 82521
Lincoln, NE 68501-2521

**U.S. Citizenship
and Immigration
Services**

JAN 1 4 2008

Refer To File No. LIN0527050474

A075772804

AMARJIT SINGH
570 FIRENZA ST
LIVERMORE CA 94551

Dear Sir or Madam:

RE: Form: I485  APPLICATION TO ADJUST TO PERMANENT RESIDENT STATUS
    Beneficiary:    SINGH, AMARJIT

## Decision

This notice refers to the Form I-485. Application to Register Permanent Residence or Adjust Status, you filed
with this office on 09/23/2005.  You are requesting an adjustment of status under Section 209 of the
Immigration and Nationality Act (INA) (Title 8, United States Code, section 1159).

Section 209(b) and (c) of the INA state:

(b)  The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's
discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the
status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who-

    (1)  applies for such adjustment,
    (2)  has been physically present in the United States for at least one year after being granted asylum.
    (3)  continues to be a refugee within the meaning of [INA] section 101(a)(42)(A) of this title or a spouse or
child of such a refugee,
    (4)  is not firmly resettled in any foreign country, and
    (5)  is admissible (except as otherwise provided under subsection (c) of this section) as an immigrant under
this chapter at the time of examination for adjustment of such alien.

Matter of K-A-, 23 I & N Dec. 661, 666 (BIA 2004) (relief under section 209(b) of the Act is discretionary).

The INA section 209(c) waiver of inadmissibility is not available to aliens who are inadmissible under INA
section 212(a)(3)(B) (terrorist activities).
Section 212(a)(3)(B)(i)(VI) of the INA, as amended by the REAL ID Act of 2005, describes an alien who is
inadmissible and states in pertinent part:

Any alien who . . . (VI) is a member of a terrorist organization described in clause (vi)(III), unless the alien can
demonstrate by clear and convincing evidence that the alien did not know, and should not reasonably have
known, that the organization was a terrorist organization . . . is inadmissible.

The INA, at section 212(a)(3)(B)(vi)(III) defines the term "terrorist organization," in part, to include an
organization "that is a group of two or more individuals, whether organized or not, which engages in, or has a

Nebraska Service Center                                                                    www.uscis.gov

Receipt Number: LIN0527050474                                    Page 2

subgroup which engages in. the activities described in sub clauses (I) through (VI) of clause (iv)."

Matter of K-A-, 23 I & N Dec. 661. 666 (BIA 2004) (relief under section 209(b) of the Act is discretionary).

The INA section 209(c) waiver of inadmissibility is not available to aliens who are inadmissible under INA section 212(a)(3)(B) (terrorist activities).

Section 212(a)(3)(B)(i) of the INA, as amended by the REAL ID Act of 2005. describes an alien who is inadmissible and states in pertinent part:

Any alien who . . . (I) has engaged in a terrorist activity. . . is inadmissible.

The INA, at section 212(a)(3)(B)(iv)(VI) defines the term "engaged in terrorist activity," in part, to "commit an act that the actor knows, or reasonably should know, affords material support, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit. false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives or training –

(aa) for the commission of a terrorist activity;
(bb) to any individual who the actor know, or reasonably should know, has committed or plans to commit a terrorist activity;
(cc) to a terrorist organization described in subclause (I) or (II) of clause (vi), or to any member of such an organization; or
(dd) to a terrorist organization described in clause (vi)(III). or to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not have reasonably known, that the organization was a terrorist organization."

Matter of K-A-. 23 I & N Dec. 661. 666 (BIA 2004) (relief under section 209(b) of the Act is discretionary).

The INA section 209(c) waiver of inadmissibility is not available to aliens who are inadmissible under INA section 212(a)(3)(B) (terrorist activities).  Section 212(a)(3)(B)(i) of the INA. as amended by the REAL ID Act of 2005. describes an alien who is inadmissible and states in pertinent part:

Any alien who...(I) has engaged in terrorist activity...is inadmissible.

The INA, at section 212(a)(3)(B)(iv)(IV) defines the term "engaged in terrorist activity," in part. to solicit funds or other things of value for –

(aa) a terrorist activity;
(bb) a terrorist organization described in clause (vi)(I) or (vi)(II): or
(cc) a terrorist organization described in clause (vi)(III), unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not have reasonably known, that the organization was a terrorist organization:

The INA. at section 212(a)(3)(B)(iv)(V) defines the term "engaged in terrorist activity." in part, to solicit any individual –

(aa) to engage in conduct otherwise described in this subsection;
(bb) for membership in a terrorist organization described in clause (vi)(I) or (vi(II); or
(cc)for membership in a terrorist organization described in clause (vi)(III) unless the solicitor can demonstrate clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization.

Nebraska Service Center                                          www.uscis.gov

On the I-485 you filed on 09/23/05 you answer Part C3 as, "I am a member of Shromani Akali Dal (Amritsar)." You provided testimony at your asylum interview on 05/23/02 that you joined Akali Dal in December of 1998. You stated that you raised money for Akali Dal and transported people to rallies. On your I-589 asylum application you wrote that you joined Akali Dal on 12/27/1998 and that you encouraged the public and party workers to participate and make Akali Dal rallies successful.

In regards to the creation of AISSF as a subgroup, a USCIS RIC (Resource Information Center) report on the All India Sikh Students Federation (AISSF) cites: "it was formed in the early 1940s by Sardar Swarup Singh, former president of the organization, to help bring educated Sikh youths into the Akali Dal, a predominantly Sikh political party in Punjab (Telford Nov 1992, IRBDC 1 Oct 1989), and to promote and propagate Sikhism amongst the college-going Sikh students (UK-COIS Apr 2006)."

The report further states that the Khalistani (Sikh separatist) movement gained momentum following the 1984 Sikh occupation of the Golden Temple in Amritsar, India, and the subsequent Indian army attack ("Operation Blue Star") on the temple, in which hundreds of Sikhs, including charismatic Sikh leader Jarnail Singh Bhindranwale, were killed. The AISSF is one of many Sikh groups that were transformed during this very volatile period in Indian history (DIS Sep 2000, TSS 13 Sep 2003, UK-COIS Apr 2006). The April 2006 report on India by the UK's Country of Origin Information Service cites April 1996 information from British officials working in India in stating that "[w]hile the AISSF sought a separate Sikh homeland, it did not fight for it until militancy erupted [in Punjab]…in 1981. From then onwards, a number of AISSF members joined the ranks of the militants" (UK-COIS Apr 2006). Likewise, a September 2003 SIKH SENTINEL article states: "…[T]he All India Sikh Student Federation (AISSF)…was a non-violent group until it split into multiple wings, some of which advocated violence" (TSS 17 Sep 2003). Dr. Chima found this depiction to be "generally correct in the sense that the AISSF never officially endorsed violence before 1984. Instead, it was a mass-based organization with probably over 100,000 members, mostly students, throughout Punjab. But, it was rumored to have a miniscule, but effective, 'armed wing' called the 'Deshmesh Regiment' [comprised] of only a few members to engage in selective political assassinations on behalf of the upper-most leadership of the AISSF" (Chima 28 Sep 2006).

According to a 1992 Department of State background information report on terrorist groups (found on the www.fas.org site), "Sikh terrorism is sponsored by a number of Indian and expatriate Sikh groups who want to carve out an independent Sikh state called Khalistan ("Land of the Pure") from Indian territory. Sikh violence outside India, which surged following the Indian Army's 1984 assault on the Golden Temple, Sikhism's holiest shrine, has decreased but remains high. Groups that have carried out acts of terrorism include the Dashmesh or 10th Regiment (active in India, Germany, and Canada); Dal Khalsa; Babbar Khalsa (India, Western Europe, Canada); and the All-India Sikh Students Federation (militant wing of the main Sikh party, the Akali Dal, now splintered)."

The DoS report goes on to state: "Regular and bloody attacks mounted frequently in India against Hindus and against Indian officials and facilities, particularly in Punjab; they include assassinations, bombings, and kidnappings. Sikh extremists probably bombed the Air India jet downed over the Irish Sea in June 1985, killing 329 passengers and crew. On the same day, a bomb planted by Sikhs on an Air India flight from Vancouver exploded in Tokyo's Narita airport, killing two Japanese baggage handlers. In 1991, Sikh terrorists attempted to assassinate the Indian Ambassador in Romania--once India's senior police officer in Punjab (1986-89)--and kidnapped and held the Romanian Charge in New Delhi for seven weeks. Sikh attacks within India, ranging from kidnappings and bombings to assassinations, continue at a high level. Indian security forces captured or killed many Sikh leaders in 1992, however, and total civilian deaths in Punjab have dropped as compared to 1991, when more than 3,300 civilians died. There was a marked drop in the number of killings during the closing months of 1992."

Quoting the US CIS report again, "The International Sikh Youth Federation (ISYF), which was founded as the international branch of the All India Sikh Students Federation (AISSF) (PSEPC 17 Nov 2004), is

aggressive and effective in its international fund raising activities (Global Security 27 Apr 2005, Satp.org undated). On June 27, 2002, the US Treasury Department added the ISYF to its listing of Specially Designated Nationals and Blocked Persons (OFAC 27 Jun 2002), and on April 29, 2004, Secretary of State Colin Powell, in consultation with the Attorney General, placed the ISYF on the Terrorist Exclusion List (USDOS 29 Dec 2004)."

    A Canadian government source at http://www.ps-sp.gc.ca/prg/ns/le/cle-en.asp states: "The International Sikh Youth Federation (ISYF) was founded in 1984 in the United Kingdom as an international branch of the All India Sikh Students' Federation (AISSF) with centers in several countries, including Canada. The ISYF is a Sikh organization whose aim is to promote Sikh philosophy and the establishment of an independent Sikh nation called Khalistan. In the pursuit of their goal, the ISYF does not hesitate to resort to violence. Since 1984, its members have been engaged in terrorist attacks, assassinations and bombings mostly against Indian political figures, but also against moderate members of the Sikh community opposed to their extremist ways. The ISYF collaborates and/or associates with a number of Sikh terrorist organizations, notably Babbar Khalsa (BK), the Khalistan Liberation Force (KLF) and the Khalistan Commando Force (KCF)."

    The INA, at section 212(a)(3)(B)(vi)(III), defines a terrorist organization as an organization that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv).

Due to its subgroups, AISSF and ISYF, the Akali Dal meets the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III). The violent activities of the AISSF and the ISYF match those described in section 212(a)(3)(B)(iii) and 212(a)(3)(B)(iv).

Due to the activities of Akali Dal it meets the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III). The violent activities of Akali Dal match those described in section 212(a)(3)(B)(iv) and 212(a)(3)(B)(iii). Thus, you are inadmissible under INA section 212(a)(3)(B)(i)(VI) based on your membership in the Akali Dal.

Due to the activities of Akali Dal meets the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III). The violent activities of Akali Dal match those described in section 212(a)(3)(B)(iv) and 212(a)(3)(B)(iii). Because your act(s) of material support of the Akali Dal was voluntary, you are inadmissible under INA section 212(a)(3)(B)(i)(I).

Due to the activities of Akali Dal meets the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III). The violent activities of Akali Dal match those described in section 212(a)(3)(B)(iv) and 212(a)(3)(B)(iii). The solicitation that you did on behalf of this organization makes you inadmissible under INA section 212(a)(3)(B)(i)(I).

Accordingly, your application must be and hereby is denied.

The regulations do not provide for an appeal to this decision.

Sincerely,

F. Gerard Heinauer
Director
NSC/COG EX516